IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TIFFANY S.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 20-cv-485-SMY |
| | ) |
| ANDREW SAUL, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff Tiffany S. seeks judicial review of the final agency decision denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for SSI and DIB in May 2016, alleging a disability onset date of May 16, 2016 (Tr. 221, 228). Her claims were denied initially on July 18, 2016, and on reconsideration on January 11, 2017 (Tr. 132, 137, 140). Plaintiff requested a hearing on February 13, 2017 (Tr. 143).

An Administrative Law Judge ("ALJ") denied Plaintiff's application on May 1, 2019, following an evidentiary hearing (Tr. 7-37). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final agency decision subject to judicial review (Tr. 1). Plaintiff exhausted administrative remedies and filed a timely Complaint with this Court.

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed.R.Civ.P. 5.2(c) and the Advisory Committee Notes.

**Issues Raised by Plaintiff**

Plaintiff raises the following issues for judicial review:

1. The ALJ erred when he failed to assess a residual functional capacity ("RFC") that included limitations found credible.

2. The ALJ erred in concluding that Plaintiff could return to past relevant work that required non-exertional skills that exceeded the limitations the ALJ determined Plaintiff retained in the RFC.

3. The ALJ erred in concluding that Plaintiff did not meet or equal listing 1.02 considering evidence she used a walker and suffered anatomical deformities of her knee.

**Legal Standard**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. Under the Social Security Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

In determining whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his or her former occupation? and (5) Is the claimant unable to perform any other work? *See* 20 C.F.R. § 404.1520. An affirmative answer at either step 3 or step 5 leads to a finding that the claimant

is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The claimant bears the burden of proof at steps 1–4. Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g). Thus, the Court is not tasked with determining whether Plaintiff was disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for substantial evidence, the Court considers the entire administrative record, but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). At the same time, judicial review is not abject; the Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

### Decision of the ALJ

The ALJ followed the five-step analytical framework with respect to Plaintiff's application. He determined that Plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. He found that Plaintiff suffered from the following severe impairments since the alleged onset date of disability: osteoarthritis of the bilateral knees and left shoulder; seizure disorder; systemic lupus erythematosus; residuals of a cerebrovascular

accident; moderate persistent asthma; and major depression. However, he found that Plaintiff's diagnoses of overactive bladder and carpal tunnel syndrome did not cause more than minimal vocationally relevant limitations and were, therefore, not severe.

The ALJ determined that Plaintiff had the RFC to do the following:

> Sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never climb ladders, ropes, and scaffolds and occasionally balance, stoop, kneel, crouch, crawl, and climb ladders, ropes, and she must avoid concentrated exposure to extreme heat and cold, wetness, humidity, vibration, fumes, odors, dusts, gases, and other pulmonary irritants; the individual can have no exposure to hazards such as unprotected heights and dangerous moving machinery; the claimant can understand and remember simple instructions; she can attend to and carry out routine and repetitive tasks; and the individual can occasionally interact with the public, coworkers, and supervisors.

The ALJ ultimately concluded that Plaintiff was not disabled because she was able to perform past relevant work as a dispatcher and weaver and other jobs that exist in significant numbers in the national economy based on the testimony of a vocational expert ("VE").

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in preparing this Memorandum and Order. The following summary of the record is directed to the points raised by Plaintiff.

1. **Agency Forms**

Plaintiff was born in 1971 and was 44 years old on the alleged onset date of May 16, 2016 (Tr. 221). In her application for disability benefits, Plaintiff listed the following conditions as limiting her ability to work: seizures, lupus, transient ischemic attacks, high blood pressure, sleep apnea, and diabetes (Tr. 264).

2. **Evidentiary Hearing**

Plaintiff was represented by counsel at her hearing on December 6, 2018 (Tr. 49) and testified to the following: She was last employed in May 2016 but was let go after having a seizure on the job (Tr. 54, 58). She suffered three seizures a month while taking Keppra and Dilantin (Tr. 55-57) and stopped driving because of the seizures (Tr. 57).

She suffers from joint pain in her hip and knees (Tr. 58). At the time of the hearing, she had been using a cane and a walker for five months (Tr. 59). She uses a walker when running errands because of her knee pain (Tr. 58-59). She estimated being able to stand 30 to 45 minutes before the pain became intolerable. *Id*. She reported that standing and sitting for long periods of time affects her knee pain and causes swelling (Tr. 59-60). She elevates her legs daily for 60-90 minutes (Tr. 61). She reported shopping twice a month with the help of her roller walker. *Id*. She can cook once a week while alternating between sitting and standing (Tr. 66) and can do some household chores such as prepare meals, fold laundry and wash dishes if she is not taking her various medications because they make her drowsy (Tr. 66-67).

A vocational expert ("VE") also testified at the hearing (Tr. 70-80). The ALJ posed hypothetical questions to the expert that corresponded to the ultimate RFC findings. *Id*. The VE testified that work exists in the national economy for an individual with Plaintiff's conditions. *Id*.

3. **Relevant Medical Records**

Plaintiff suffered a stroke on May 14, 2015. (Tr. 373, 382). Four months later, she required inpatient care for new onset diabetes. (Tr. 448, 451). She suffered a seizure on May 16, 2016 (Tr. at 483). Appointments in 2016 for sleep apnea and primary care follow-ups were otherwise unremarkable (Tr. 505-508, 536, 681).

Plaintiff suffered another cardiovascular accident in November 2016 (Tr. 613). An atraumatic head, supple neck with normal range of motion, and normal musculoskeletal range of motion were noted during Plaintiff's discharge physical examination. *Id*. Pulmonary testing conducted on Plaintiff two weeks later revealed a systolic murmur (Tr. 675). Plaintiff underwent a series of unremarkable cardiac testing in 2016 to determine a cause for her high blood pressure (Tr. 858).

Plaintiff reported bilateral knee pain in May 2017 (Tr. 700-701). She required inpatient care for a hypertensive emergency the same month (Tr. 704, 714). Plaintiff received treatment for musculoskeletal impairments throughout 2017. She reported left shoulder pain that was diagnosed by x-ray to be osteoarthritis. (Tr. 566-567, 748). Dr. Charles Ampadu ordered Plaintiff wrist splints to wear at night after an examination in July 2017 (Tr. 552-553). X-rays of Plaintiff's knees revealed bilateral osteoarthritis (Tr. 568-569).

Plaintiff reported non-exertional chest pain and lower extremity swelling in August 2017 (Tr. 893). A Holter monitor showed no significant abnormalities (Tr. 924). She was admitted for inpatient care in October 2017 for chest pain, right arm pain, and seizures prior to admission (Tr. 875-876). A clinical examination yielded a positive Phalen on the right and x-ray evidence of degenerative disc disease (Tr. 955, 958).

Plaintiff saw Kimberly Burgess, APRN, on October 31, 2017, and reported knee pain worse with walking long distances (Tr. 1013). An x-ray did not reveal bony abnormalities (Tr. 1015). Burgess recommended physical therapy (Tr. 1017). Plaintiff returned two months later and reported that she had not had the physical therapy because of her elevated blood pressure (Tr. 1010). Burgess noted tenderness to palpation and limited range of motion in Plaintiff's knees (Tr. 1012). She diagnosed Plaintiff with arthritis and prescribed a wheeled walker (Tr.

1012). Dr. Khaja Mohsin, a primary care provider, subsequently referred Plaintiff to an orthopedist and pain management physician for knee pain.

Dr. Vivek Manchanda, an orthopedist, examined Plaintiff in February 2018 (Tr. 1232). He noted that Plaintiff had diffuse tenderness in her knees, and recommended genicular injections, which Plaintiff underwent. *Id*. Burgess examined Plaintiff in March 2018 and again noted tenderness and limited range of motion in Plaintiff's knees. She recommended ongoing physical therapy and injection treatment (Tr. 1008-1009). Plaintiff reported that her knee pain had not improved with injection therapy or physical therapy at her follow-up appointment with Dr. Manchanda (Tr. 1229). Dr. Manchanda recommended another injection, which Plaintiff underwent in March 2018 (Tr. 1230, 1270). Dr. Manchanda gave Plaintiff another injection in May 2018 (Tr. 1227).

Plaintiff had a follow-up appointment with Burgess on June 18, 2018. She rated her knee pain as "high" (Tr. 1003) and exhibited reduced range of motion (Tr. 1005). Dr. Ampadu examined Plaintiff in August 2018 and noted lower extremity weakness and stiffness (Tr. 1162).

Plaintiff initiated pain management with Dr. Tong Zhu on September 13, 2018 (Tr. 1218). She reported knee pain worse with standing, walking, and sitting and better with lying down (Tr. 1218). Dr. Zhu noted crepitus, limited range of motion, and swelling in Plaintiff's knees. *Id*. He diagnosed Plaintiff with osteoarthritis (Tr. 1219).

Dr. Donald Bassam, an orthopedist, examined Plaintiff on October 3, 2018 (Tr. 1212). Plaintiff reported minimal relief from the treatment and injections she had received (Tr. 1212). Dr. Bassam noted crepitus and findings consistent with arthritis (Tr. 1212-1213). Bilateral knee x-rays the following week revealed osteoarthritis (Tr. 1240).

Dr. Zhu treated Plaintiff for knee pain on October 15, 2018 and noted that she had limited response to treatment (Tr. 1214).

Dr. Bassam examined Plaintiff on October 31, 2018, noted she had a positive McMurray sign and crepitus in both knees, and diagnosed a lateral meniscus tear and degenerative arthritis based on CT-scan evidence (Tr. 1210-1211). He concluded that conservative treatment was the best way to treat Plaintiff (Tr. 1211, 1348).

### 4. Medical Opinions

Dr. Khaja Mohsin, a treating physician, completed a Medical Source Statement – Physical on October 10, 2018 (Tr. 1130-1132). Dr. Mohsin opined as follows: Plaintiff could occasionally lift ten pounds and twist, occasionally balance, never stoop, crouch, crawl, or climb, and rarely – defined as 1% to 5% of the workday – twist (Tr. 1131); could sit for 30 minutes at a time, stand for 20 minutes at a time for less than two hours in an eight-hour workday, and would need the ability to shift positions at will from sitting, standing, or walking *Id.*; Plaintiff would need a ten-minute break every 30 to 60 minutes, required the use of a cane often, would be off task 20% of the workday, and miss more than four days of work a month due to her symptoms (Tr. 1132).

### 5. State Agency Consultants' Opinions

On July 15, 2016, Julio Pardo, M.D. reviewed the evidence and opined that Plaintiff was capable of light work with the ability to occasionally perform all postural activities except that she could never climb ladders, ropes, and scaffolds (Tr. 83-90). Dr. Pardo also found that Plaintiff should avoid concentrated exposure to extreme temperature, wetness, humidity, noise, vibration, pulmonary irritants, and hazards. *Id.*

Frank Mikell reviewed Plaintiff's file on January 10, 2017. He concluded that Plaintiff should be limited to light work with the ability to frequently balance, should never climb ladders, ropes, and scaffolds, should avoid concentrated exposure to pulmonary irritants and hazards, and could occasionally perform all other postural activities (Tr. 104-115).

## Discussion

Plaintiff asserts that the ALJ failed to specify the exact amount of time she could sit, stand, and walk either at one time or in total. Dr. Moshin opined that Plaintiff could sit for 30 minutes at a time, stand for 20 minutes at a time for less than 2 hours in an eight-hour workday, and stated that Plaintiff would need the ability to shift positions at will from sitting, standing, or walking (Tr. 1131). In his discussion of Dr. Moshin's opinions, the ALJ noted:

> The exertional limitations are partially supported by the treatment history, which show that [Plaintiff] displayed bilateral knee tenderness with crepitus and decreased range of motion, left shoulder tenderness, lethargy, an antalgic gait, lower leg weakness and stiffness, and limited range of motion of the back with tenderness and spasms…

(Tr. 26-27). The ALJ further found that records also showed that Plaintiff had a range of symptoms that were "inconsistent with the time off task and reported days [Plaintiff] would miss work. Accordingly, this opinion is given partial weight" (Tr. 27). However, the ALJ's decision is silent as to Dr. Moshin's opinion regarding the length of time Plaintiff can stand, sit, and walk. Additionally, the ALJ's RFC finding does not consider Plaintiff's testimony about the pain she experiences in her knees and that standing or sitting for long periods of time exacerbates the pain (Tr. 59-60).

The Court finds that the ALJ's failure to fully address the evidence related to Plaintiff's alleged inability to sit and stand for prolonged periods of time during the workday constitutes error as "[t]he adjudicator must consider all allegations of physical and mental limitations or

restrictions...." SSR 96–8p, 1996 WL 374184, at *5. Moreover, the ALJ "must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir.2009); s*ee* also *Liggins v. Colvin*, 593 Fed. Appx. 564, 568 (7th Cir. 2015) (remanding, in part, because the ALJ failed to provide a reasoned basis for excluding sitting limitation from claimant's RFC); *Eakin v. Astrue*, 432 Fed. Appx. 607, 611 (7th Cir. 2011) (ALJ's error was compounded by failure to address claimant's "testimony about limitations arising from radiating pain in her hip, about her inability to sit and stand for extended periods of time, and about the frequency with which she needed to alternate positions").

Accordingly, remand is appropriate in this case for the ALJ to address the evidence regarding the Plaintiff's ability to sit and stand, to formulate an RFC that is sufficiently specific as to how often she must be able to sit and stand, and to determine whether the RFC should include the need to alternate between sitting and standing. Because the Court has determined that remand is necessary, it need not address Plaintiff's remaining arguments. Plaintiff may raise those issues directly with the ALJ on remand.

This Memorandum and Order should not be construed as an indication that the Court believes that Plaintiff is disabled or that she should be awarded benefits. The Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

After careful review of the record, the Court finds that the ALJ committed errors of law. Therefore, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for

rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g).

The Clerk of Court shall enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED:  March 21, 2022**

_____
**STACI M. YANDLE**
**United States District Judge**
